IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BOBBI BOCKORAS, )<br>                Plaintiff, )<br>)<br>v. )<br>)<br>SAINT-GOBAIN CONTAINERS, INC., )<br>d/b/a VERALLIA NORTH AMERICA )<br>                Defendant. )<br>) | Civil Action No. 1:13-cv-00334-MRH<br><br>The Honorable Mark R. Hornak<br><br>ELECTRONICALLY FILED |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE**

Defendant, Saint-Gobain Containers, Inc. d/b/a Verallia North America ("Defendant"), respectfully submits the following Reply In Support of Its Motion to Dismiss or, in the Alternative, to Strike.

**I.    INTRODUCTION**

The Court should grant Defendant's Motion to Dismiss because, despite Plaintiff's attempts to characterize various workplace issues as materially adverse actions, the alleged adverse actions are – as a matter of law – insufficient to support a claim of retaliation under Section 215(a)(3) of the Fair Labor Standards Act ("FLSA"). Plaintiff provides a lengthy narrative of alleged harassment and discrimination but alleges no conduct that would dissuade a reasonable person in her position from asserting her rights under Section 207(r) of the FLSA. Accordingly, her Complaint should be dismissed for failure to state a claim.

Furthermore, should the Court decide not to dismiss Plaintiff's Complaint in its entirety, it should grant Defendant's Motion to Strike under Rule 12(f) to streamline the present litigation and reduce Plaintiff's attempted conflation of Title VII and the FLSA. Because Plaintiff's claims for punitive damages, non-wage compensatory damages, and declaratory and injunctive

brief

relief serve to confuse the issues before the Court and invite the unnecessary foray into immaterial matters, this Court should strike those portions of her Complaint.

## II. ARGUMENT

### A. Plaintiff's FLSA Retaliation Claim Should Be Dismissed in Its Entirety Because Plaintiff Fails To Allege That She Suffered A Materially Adverse Action.

Dismissal is appropriate if a plaintiff has not pleaded "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Despite its lengthy factual allegations and narrative specificity, Plaintiff's Complaint fails to allege enough facts to plausibly support a claim for retaliation under the FLSA. To survive Defendant's 12(b)(6) motion, at a bare minimum Plaintiff's Complaint must contain facts to show that her participation in protected conduct caused Defendant to take a materially adverse action against her that was so severe as to dissuade her from engaging in activity protected by the applicable statute. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). As a matter of law, an adverse action might dissuade a reasonable employee from engaging in protected activity only if it causes a significant change in employment status, requires the performance of significantly different responsibilities, or causes a significant change in pay or benefits. *See Daniels v. UPS*, 701 F.3d 620, 635 (10th Cir. 2012).

In her brief in opposition, Plaintiff argues that the following alleged adverse actions are material: (1) her return to her regular shift; (2) Defendant's alleged indifference to her complaints of sexual harassment; (3) her assignment of tasks usually reserved for employees with the lowest level of seniority; and (4) her denial of a single overtime shift for which she was ultimately paid in full. Plaintiff's retaliation claim should be dismissed because these alleged

adverse actions, taken alone or in concert, would not dissuade a reasonable employee in her position from asserting the right to break time and a place to express her breast milk.

### 1. *Plaintiff's Return To Her Regular Rotating Shift Assignment Is Not A Materially Adverse Action Under The FLSA.*

In her response brief, Plaintiff relies on *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) (citing *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658, 659 (7th Cir. 2005), for the proposition that "context matters," arguing that the reinstatement of her original rotating shift was retaliatory conduct under the FLSA because a change in work schedule can be a materially adverse action for those with caregiving responsibilities. [Dkt. 35 at 5, 7.] She also relies on *Taylor v. Roche*, 196 Fed. Appx. 799, 803 (11th Cir. 2006), in arguing that Defendant's alleged repeated refusal to assign her to the day shift constitutes an adverse action. [*Id*. at 13.] Plaintiff's reliance on *Burlington Northern* and *Washington* is misplaced.

First, Plaintiff selectively quotes from *Washington* and ignores the court's rationale for deeming the schedule change "materially adverse." [*Id*. at 7.] In the sentence immediately following the one Plaintiff quotes, the *Washington* court emphasizes the monetary impact of the shift change. *See Washington,* 420 F.3d at 662. Specifically, the court explains:

> Working 9-to-5 was materially adverse *for her*, even if it would not have been for 99% of the staff. In practical effect the change cut her wages by 25%, because it induced her to use leave for two hours per day (her salary remained the same, but her vacation and sick leave drained away, which is an effective reduction in salary). When her leave ran out, her pay fell to zero for five months, until she found a supervisor willing to let her go at 3.

*Id.* (emphasis in original). Moreover, later in its opinion, the court emphasizes that had the plaintiff not been forced to miss work and lose wages, her retaliation claim would not have been viable. *Id.* at 663 ("[T]his is not to say that Washington necessarily has a good claim. Perhaps she responded unreasonably to the change in hours; *if she had other options to care for her son*

3

*without an (effective) reduction in pay, then the change in working hours would not be material.*") (emphasis added).

Here, Plaintiff has not alleged that her return to the rotating shift caused her to suffer an effective change in pay (or any actionable, pecuniary loss), but rather a disruption of the work schedule she subjectively preferred. She complains of not being able to enjoy an uninterrupted eight hours of sleep due to her daughter's feeding schedule, [*see* dkt. 1 at ¶ 103], but cites no authority for the proposition that not receiving preferential scheduling is an adverse action, and Defendant found no such case in its search. Plaintiff's sense of entitlement to a preferential shift assignment is the exact sentiment routinely rejected by courts. *See, e.g., Amati v. United States Steel Corp.*, 304 Fed. Appx. 131, 133-35 (3d Cir. 2008) (holding that employer's failure to grant employee's request to be placed on special assignment is not a materially adverse action); *McGowan v. City of Eufala*, 472 F.3d 736, 742-43 (10th Cir. 2006) (holding that employer's failure to reassign an employee to day shift is not a materially adverse action); *Daniels v. United Parcel Service, Inc.*, 701 F.3d 620, 635-36 (10th Cir. 2012) (holding that employer's permanent assignment of an employee to night shift is not a materially adverse action). Accordingly, neither *Burlington Northern* nor *Washington* can save Plaintiff's claim from dismissal.

Second, Plaintiff argues that "repeated refusals" to change an employee's shift can constitute a materially adverse action, [dkt. 35 at 13 (citing *Taylor*, 196 Fed. Appx. at 803)]. Contrary to Plaintiff's contention, Defendant's actions cannot be characterized as "repeated refusals" of her shift-change request. The "multiple instances" she cites all occurred within a three-week span in August 2013 and are, in fact, multiple conversations concerning a *single* request by Plaintiff to be transferred to a daytime shift that month. [*See* dkt. 1 at ¶¶ 62, 64, 66, 90.] The facts alleged do not indicate a pattern of refusal by Defendant, but rather a persistent

4

refusal on Plaintiff's part to accept Defendant's initial denial of her single request to be transferred to a permanent daytime shift in the month of August.  Defendant's assignment of Plaintiff to a daytime shift was a temporary accommodation, and while Defendant allowed her seven weeks of preferential scheduling to facilitate her return from having her baby, it was not legally bound to do so, and it certainly was not bound to reassign her permanently to such a shift.  Again, as a matter of law, the denial of such preferential treatment is not a materially adverse action.  *See Amati*, 304 Fed. Appx.at 133-35; *McGowan*, 472 F.3d 736, 742-43; *Daniels*, 701 F.3d at 635-36.  Accordingly, Plaintiff's return to her regularly scheduled rotating shift, after a seven-week allowance of preferential scheduling, cannot be deemed a materially adverse action.

### 2. *Defendant's Alleged Failure To Address Plaintiff's Complaints Of Sexual Harassment Is Not A Materially Adverse Action Under the FLSA.*

Plaintiff is likewise incorrect in arguing that an employer's tolerance of co-worker harassment may constitute a materially adverse action.  [Dkt. 35 at 9.]  She cites three Third Circuit cases for the proposition that condoned harassment can support the inference that an employer had a retaliatory motive for its actions.  [*Id.* at 14 (citing *Farell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000); *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 303 (3d Cir. 2007); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 922 (3d Cir. 2007))._]  The holdings of these cases are wholly inapposite to the issue before the Court.

In each of the cases Plaintiff cites, the issue was whether the condoned harassment could support a finding of a causal connection – not whether the condoned harassment constituted a materially adverse action.  *Id.*  Moreover, in each of these cases, the plaintiff's harassment complaints and retaliation claim were made pursuant to the same statute.  *Id.*  Whether an employer seemingly condones harassment may bear on the issue of causation (*i.e.*, whether an

employer had a retaliatory motive in taking an adverse action), but *condoning harassment is not itself a materially adverse action,* and none of the cases Plaintiff cites supports that proposition. As a matter of law, Plaintiff's FLSA retaliation claim cannot be predicated on her complaints of Title VII sexual harassment. *See* Department of Labor, Request for Information, 75 Fed. Reg. 80073, 80078 (Dec. 21, 2010).

At issue here is not whether Plaintiff's Complaint alleges a retaliatory motive or causal relationship between the shift change and her protected conduct, but rather whether the shift change can be properly considered an adverse action. Accordingly, cases bearing on whether she can support an inference of retaliatory motive for the shift change are completely irrelevant to the issue at hand, and her argument that Defendant's allegedly condoning harassment constitutes a materially adverse action is wholly lacking in legal basis.

Plaintiff also attempts to characterize the alleged sexual harassment by her co-workers as "a discrete materially adverse action" for purposes of her FLSA retaliation claim, citing *Morris v. Great Lakes Behavioral Inst./Diversified Care Mgmt.*, 2007 WL 4198273, at **20-21 (W.D. Pa. Nov. 27, 2007). [Dkt. 35 at 9.] *Morris*, in which the court held that the plaintiff's complaint of a hostile work environment was sufficient to support her retaliation claim under the Pennsylvania Human Relations Act and Section 1981, cannot help Plaintiff here as there is no hostile work environment harassment claim available under the FLSA. *See id.* at *20. Again, Plaintiff's argument fails as a matter of law because she cannot predicate her FLSA retaliation claim on her complaints of Title VII sexual harassment. *See* Department of Labor, Request for Information, 75 Fed. Reg. at 80078. Accordingly, Plaintiff's allegations of sexual harassment cannot support her claim.

### 3. *Plaintiff's Assignment Of Lower-Level Duties And Denial Of A Single Overtime Shift Are Not Materially Adverse Actions Under The FLSA.*

Finally, in her brief, Plaintiff cursorily mentions two other actions that she claims constitute materially adverse actions: her alleged assignment of tasks usually reserved for employees with the lowest level of seniority and her alleged denial of a single overtime shift. [Dkt. 25 at 10-11.] As a matter of law, such minor or trivial actions do not constitute materially adverse actions sufficient to support a retaliation claim. *See, e.g., Burlington Northern*, 548 U.S. at 68, 126 S. Ct. at 2415 (holding that a plaintiff's participation in protected conduct "cannot immunize [her] from those petty slights or minor annoyances that all employees experience"). *Id*.

Moreover, with respect to the reassignment of tasks, Plaintiff alleges only that some of the tasks she was assigned "on an ad hoc basis" in September 2013 were those usually performed by employees of a lower seniority level. [*Id*. at ¶ 92.] Plaintiff alleges no reduction in pay. In fact, Plaintiff acknowledges in her Complaint that, rather than return Plaintiff to the physically intensive palletizer operator position following her leave to have her child, Defendant assigned her to re-select duties (and other tasks as assigned) to accommodate her need to take frequent pumping breaks. [Dkt. 1 at ¶¶ 30-31, 91.] Being accommodated with lower-level tasks for equal pay and more flexible break-time would not have deterred Plaintiff from exercising her rights as a nursing mother. No reasonable person would have preferred the arduous duties of the palletizer operator to the accommodation of an easier, more flexible workload. Similarly, with respect to her denial of a single overtime shift, Plaintiff does not allege that she suffered any harm. Rather, Plaintiff admits that she was paid for the shift. [*Id*. at 100.] To be sure, receiving full compensation for an unworked shift can hardly be deemed a deterrent. As a matter of law,

7

neither of these actions would deter a reasonable person from exercising her rights under the FLSA. *See Burlington Northern*, 548 U.S. at 68. ("[W]e speak of *material* adversity because we believe it is important to separate significant from trivial harms.") (emphasis in original).

Finally, Plaintiff has failed to identify the person who allegedly made the decision to assign her lower-level work and the person who allegedly made the decision to deny her the overtime shift. She has also failed to allege that either of these unidentified decision-makers was aware that she had asserted her right to breaks and a place to express her breast milk. As such, Plaintiff's retaliation claim fails. *See* Department of Labor, Request for Information, 75 Fed. Reg. at 80078.

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety for failing to allege a materially adverse action.

### B. The Court Should Strike Plaintiff's Requests For Punitive Damages, Non-Wage Compensatory Damages, And Declaratory And Injunctive Relief.

If the Court does not dismiss the Complaint, it should strike Plaintiff's claims for punitive damages, non-wage compensatory damages, and declaratory and injunctive relief. As a preliminary matter, Defendant disagrees with Plaintiff's contention that its Motion to Strike is improper. [Dkt. 35 at 15.] Plaintiff incorrectly asserts that Defendant's motion is "procedurally improper because Rule 12(f) cannot be used to strike a request for punitive damages," [*id*.], citing, without elaboration, *North Side Foods Corp. v. Bag-Pack, Inc.*, 2007 U.S. Dist. LEXIS 22348 at * 3 (W.D. Pa. Mar. 28, 2007), a single-paragraph, summary denial that fails to mention punitive damages and places no such restriction on Rule 12(f).

The purpose of a motion to strike under Rule 12(f) is to "clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Thornton v. E.L.*

*Enter. LLC*, 2010 U.S. Dist. LEXIS 24207, at *11 (W.D. Pa. Mar. 16, 2010) (internal citation and quotation marks omitted).  In moving to strike Plaintiff's claims for punitive damages, non-wage compensatory damages (namely damages for emotional distress), and injunctive relief, Defendant seeks to avoid the unnecessary foray into Plaintiff's claims not covered by the FLSA, and a Rule 12(f) motion is the proper vehicle by which to do so.  *See id*. at *12 (noting that Rule 12(f) motions are properly granted if "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations *confuse the issues in the case*.") (emphasis added) (internal citation and quotation marks omitted).  Because Plaintiff seeks to enlarge the scope of the FLSA by seeking damages to which she is not entitled under 216(b), this Court should strike the portions of her prayer for relief seeking punitive damages, non-wage compensatory damages, and declaratory and injunctive relief.

    **1.**    *Punitive and Non-Wage Compensatory Damages Are Not Recoverable Under Section 216(b).*

The Third Circuit has not addressed the issue of whether punitive and non-wage compensatory damages are recoverable under Section 216(b).  However, this Court is not without guidance from the Third Circuit on the proper interpretation of the language contained in Section 216(b).  This Court should follow the Third Circuit's reasoning in *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834, 841-42 (3d Cir. 1997), in which the Third Circuit held that non-wage compensatory damages are not recoverable under the ADEA, which contains virtually identical remedial language as the FLSA.  Furthermore, Defendant urges this Court to join the Eleventh Circuit Court of Appeals, which relied on the principle of *ejusdem generis* in holding that "punitive damages would be out of place in a statutory provision aimed at making the plaintiff whole." *Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 934-35 (11th Cir. 2000)

(rejecting the Seventh Circuit's opinion a decade earlier in *Travis v. Gary Community Mental Health Center*, 921 F.2d 108, 112 (7th Cir. 1990)).

With respect to both punitive and non-wage compensatory damages, Plaintiff's argument that these damages are contemplated by Section 216(b) is internally inconsistent. On the one hand, Plaintiff urges the broadest interpretation possible, claiming that "nothing in the language of Section 216(b) precludes any form of relief." [Dkt. 35 at 16.] On the other hand, she acknowledges that a form of remedy is only available if it "effectuates the remedial purpose of the statute." [*Id.*] Her overly broad application of the phrase "without limitation" would require the Court to essentially ignore the example forms of redress listed immediately after that phrase, as well as any guidance the substance of that list may provide in determining what type of remedy would effectuate the remedial purpose of the statute. [*Id.*] As the Eleventh Circuit aptly reasoned in *Snapp*, the statutory phrase "including without limitation" may indicate that the list that follows is not exhaustive, but this Court should find that the list is nevertheless instructive. *Snapp*, 208 F.3d at 933-39. The types of redress specifically enumerated in Section 216(b) make clear that the remedial purpose of that provision is to restore the plaintiff to the position he or she held prior to suffering retaliatory conduct. *See id.* (noting that the remedial purpose of Section 216(b) was "aimed at making the plaintiff whole").

In arguing that punitive damages are available to her under Section 216(b), Plaintiff relies heavily on the Seventh Circuit's rationale in *Travis*, 921 F.2d at 112. However, Plaintiff's allegations are readily distinguishable from the uniquely sympathetic circumstances of the plaintiff in *Travis*, who was awarded a jury verdict of $83,000 for retaliatory discharge under 42 U.S. § 1985(2), rather than the appropriate FLSA provision in Section 216(a)(3), *id*. at 109, and for whom the Seventh Circuit crafted an argument, *sua sponte*, by which she could nevertheless

keep the award, holding that intentional torts like retaliatory discharge support an award of punitive and compensatory damages. *See id* at 112. ("Fed. R. Civ. P. 54(c) requires courts to award the relief to which a prevailing party is entitled, even if that party did not request the relief or relied on the wrong statute.").

Here, Plaintiff does not allege that Defendant committed the intentional tort of retaliatory discharge (nor is she the inadvertent recipient of a procedurally faulty jury award). Indeed, as explained above, she not only has suffered no lost wages or job loss, but she has failed to allege any materially adverse action whatsoever. Furthermore, she confuses the issues before the Court in arguing that she is entitled to punitive and non-wage compensatory damages for such alleged harms as "emotional distress, suffering, [and] humiliation," presumably as a result of the alleged harassment she suffered from co-workers in violation of Title VII. *See* Department of Labor, Request for Information, 75 Fed. Reg. at 80078 (describing Title VII claims related to breast milk expression at work as distinct causes of action from those brought pursuant to Section 216(b) of the FLSA). Plaintiff's request for these damages impermissibly conflates Title VII and FLSA issues and should be stricken to reduce this confusion of issues before the Court. *Thornton*, 2010 U.S. Dist. LEXIS 24207, at *11.

Moreover, the Third Circuit has already interpreted remedial language prefaced with the phrase "without limitation" to exclude non-wage compensatory damages. *See Rogers*, 550 F.2d at 841-42 (interpreting the ADEA). Plaintiff cites *Marrow* in arguing that "all forms of redress," including damages for emotional distress, are available to her, [dkt. 35 at 12], but the *Marrow* court, while drawing distinctions between the ADEA and FLSA with respect to punitive damages, criminal penalties, and showings of willfulness, identifies no difference between the ADEA and FLSA regarding damages for pain and suffering. *See Marrow v. Allstate Sec. &*

11

*Investigative Servs.*, 167 F. Supp. 2d 838, 845 (E.D. Pa. 2001) (accepting the reasoning in *Rogers*, 550 F.2d at 839, precluding non-wage compensatory damages).  Although *Marrow* later takes an overly literal approach to the phrase "without limitation" in holding that the "simplest reading [of Section 216(b)] … contemplates punitive damages," *id*. at 842, this simplistic interpretation is unsupported by Third Circuit precedent.  *See Rogers*, 550 F.2d at 841-42.

This Court should join the Eleventh and Fifth Circuits (and reject the *Marrow* court's unprecedented expansion of the FLSA) in holding that because the FLSA mentions punitive damages in Section 216(a) regarding willful violations, and specifically lists only liquidated (not punitive) damages in Section 216(b), "the omission of any reference thereto was intentional." *Id.* at 938 (quoting *Dean v. American Security Ins. Co.*, 559 F.2d 1036 (5th Cir. 1977)).  Moreover, this Court should follow *Rogers* in holding that non-wage compensatory damages are not recoverable under the language of Section 216(b).  Accordingly, Defendant asks that this Court strike from Plaintiff's Complaint any claims for punitive and non-wage compensatory damages.

### 2. *The Type of Declaratory and Injunctive Relief Plaintiff Seeks Is Likewise Not Recoverable Under Section 216(b).*

The specific types of relief Plaintiff seeks, namely company-wide policy changes and preferential scheduling, are not available to a private party under Section 216(b).  The type of equitable relief sought must "effectuate the purposes" of that provision.  29 U.S.C. § 216(b).  *See also Bailey v. Gulf Coast Transportation, et al.*, 280 F.3d 1333, 1336 (11th Cir. 2002) ("[A]llowing for such relief to put the employee back in the position he held before the employer's retaliatory conduct is consistent with § 216(b) – it is a form of equitable relief that effectuates the purposes of the antiretaliation provision.").  Here, Plaintiff's prayer for relief extends far beyond the remedial purposes of the FLSA's antiretaliation provision and instead seeks relief more properly sought under Title VII.  [Dkt. 1 at 23-24.]

Plaintiff spends over 100 paragraphs discussing allegations of harassment and discrimination that more appropriately belong in a Complaint alleging violations of Title VII, not the FLSA. [*See generally* dkt. 1.] In her prayer for relief, she again confuses the FLSA for Title VII by asking for such declaratory and injunctive relief as "policy changes to protect the rights of nursing mothers," [*id*. at 23], training for managers "on prevention and appropriate response to sexual harassment," [*id.* at 24], and procedures to more promptly handle "complaints of discrimination and harassment," [*id*.]. Like the punitive and non-compensatory wage damages Plaintiff seeks, the nature of her requested declaratory and injunctive relief again impermissibly conflates Title VII and FLSA issues and should be stricken. *See Thornton*, 2010 U.S. Dist. LEXIS 24207, at *11; *see also* Department of Labor, Request for Information, 75 Fed. Reg. at 80078 (describing Title VII claims related to breast milk expression at work as distinct causes of action from those brought pursuant to Section 216(b) of the FLSA).

The cases Plaintiff cites in her response brief regarding a private right of action to obtain equitable relief make clear that the type of equitable relief properly sought under Section 216(b) is that which would "effectuate the purposes of the antiretaliation provision" and reverse the retaliatory conduct, such as "employment, reinstatement, and promotion." *Bailey*, 280 F.3d at 1336; *see also Attanasio v. Cmty Health Sys.*, 2011 U.S. Dist. LEXIS 121764, at *9 (M.D. Pa. Oct. 20, 2011). Here, Plaintiff has suffered no loss of job or demotion; indeed, as explained above, she has suffered no materially adverse action whatsoever. Plaintiff can point to no alleged retaliatory conduct for which to seek an injunctive remedy, and so instead, impermissibly seeks injunctive relief for alleged discriminatory, non-retaliatory harms not covered under Section 216(b) of the FLSA. This Court should decline Plaintiff's invitation to expand the FLSA in such a far-reaching manner.

Because the declaratory and injunctive relief Plaintiff requests does not seek to remedy any alleged retaliatory conduct prohibited by Section 216(b) of the FLSA, the Court should strike that portion of Plaintiff's prayer for relief to streamline this litigation, reduce the confusion of Title VII and FLSA issues pervasive throughout Plaintiff's Complaint, and "avoid the unnecessary foray into immaterial matters." *Thornton*, 2010 U.S. Dist. LEXIS 24207, at *11.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety with prejudice. Alternatively, Defendant respectfully requests that the Court strike Plaintiff's claims for punitive damages, non-wage compensatory damages, and declaratory and injunctive relief.

Respectfully submitted,

*/s/ Carolyn Clay Hall*
Duane R. Denton, Atty. # 13956-49
Carolyn Clay Hall, Atty. #24124-49
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204

COUNSEL FOR DEFENDANT,
SAINT-GOBAIN CONTAINERS, INC. D/B/A
VERALLIA NORTH AMERICA

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of Appearance was filed electronically with the Court on this date.  Notice of this filing will be sent by operation of the Court's ECF electronic filing system to all counsel of record.

*/s/ Carolyn Clay Hall*
Carolyn Clay Hall

Dated:  January 10, 2014